UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>HOANG AI LE,<br><br>        Defendant. | No. 2:99-cr-00433 WBS<br><br>ORDER RE: SENTENCING OBJECTIONS |

----oo0oo----

This case is back before this court on remand from the Ninth Circuit for resentencing. Defendant Hoang Ai Le has filed several objections (Docket No. 2005) to the new Presentence Report (Docket No. 2002). The court notes that Objections 2 through 13, or at least substantially similar objections, were raised and overruled at the time of defendant's resentencing in 2020. The court adopts its prior findings at the 2020 sentencing to the extent they are not inconsistent with this Order or the Ninth Circuit's 2021 memorandum disposition, United States v. Le, No. 20-10249, 2021 WL 4892166 (9th Cir. Oct. 20, 2021). The

1

court further addresses each objection briefly in the following discussion.

Objection 1

Defendant's first objection is that he should receive a three-level reduction under U.S.S.G. § 2X1.1(b)(2) based on an "incomplete" conspiracy. The court notes that neither the probation officer nor the parties raised the issue of § 2X1.1 at the prior sentencing or resentencing, and the issue was first raised on appeal in 2021. As such, the court never had the opportunity to make a finding concerning the applicability of this section. On the Ninth Circuit's instruction, it does so now.

Section 2X1.1(b) provides in relevant part:

> If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.[1]

The Background Note to § 2X1.1 states:

> In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. In such cases, no reduction of the offense level is

---

[1] The probation officer's letter responding to defendant's objections suggests that the reduction applies when there <u>was</u> an interruption not in the defendant's control. (See Docket No. 2002-2 at 2 ("There was no indication of an apprehension or interruption by some similar event beyond their control. It was within their control. They just went to the wrong employee's house; therefore, the three-level decrease was not applied.").) The correct reading is that the reduction applies when there was <u>not</u> an interruption not in the defendant's control -- e.g., when defendant voluntarily abandoned the conspiracy.

2

> warranted. Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense. Under such circumstances, a reduction of 3 levels is provided under § 2X1.1(b)(1) or (2).

Defendant argues that he is entitled to a three-level reduction under § 2X1.1 because the object of the conspiracy -- robbing DFI -- was never completed.

Here, the conspirators completed the robbery of the victim -- an employee of DFI -- by restraining and torturing him, threatening his family in his presence, and subsequently taking approximately $1,500 worth of his personal property. These actions constitute "the unlawful taking or obtaining of personal property" from the victim "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property . . . or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." See 18 U.S.C. § 1951(b)(1). Had the conspirators entered the DFI facility, they would have fully completed a Hobbs Act robbery.

By the time the conspirators discovered that the victim could not provide the alarm codes, the conspirators had already entered the victim's residence, tied up the victim and his parents, and tortured and interrogated the victim in furtherance of the planned DFI robbery. Because defendant and his "entry" team were already waiting at a nearby motel for the signal to proceed to the DFI warehouse, the conspirators were "about to complete" the offense at the time it was interrupted. See U.S.S.G. § 2X1.1; United States v. Velez, 357 F.3d 239, 240, 242

1  (2d Cir. 2004) (conspirators were "about to complete" robbery
2  conspiracy and defendant was not entitled to three-level
3  reduction under § 2X1.1 where conspirators had driven by business
4  that was target of conspiracy and bought gloves for the robbery
5  when law enforcement intervened).  Cf. United States v. Martinez-
6  Martinez, 156 F.3d 936, 939-40 (9th Cir. 1998) (conspirators were
7  not "about to complete" robbery conspiracy where boss had not
8  made the decision to carry out the theft).
9           Although the interruption of the conspiracy stemmed
10 from a mistake of identity by the conspirators, the victim's
11 inability to provide the codes -- and by extension the
12 conspirators' inability to complete the conspiracy -- was
13 ultimately out of the conspirators' control.  Such "factual
14 impossibility constitutes an event beyond the defendant's control
15 such that the reduction is inappropriate." United States v.
16 Jones, 791 F.3d 872, 875 (8th Cir. 2015); see also United States
17 v. Lutchman, 910 F.3d 33, 39-40 (2d Cir. 2018) ("the fact that it
18 may be unlikely, or even impossible, for a conspiracy to achieve
19 its ends" at the time of its interruption "is not dispositive in
20 determining whether a three-level reduction is warranted under
21 section 2X1.1(b)(2), because that section determines punishment
22 based on the conduct of the defendant, not on the probability
23 that a conspiracy would have achieved success").
24          Because the conspiracy was interrupted by the
25 conspirators' inability to complete the intended object of the
26 conspiracy, defendant is not entitled to a reduction under §
27 2X1.1.  See United States v. Panaro, 75 F. App'x 590, 592 (9th
28 Cir. 2003) (defendant not entitled to reduction under § 2X1.1

where co-conspirators were prevented from completing object of conspiracy -- "ousting" victim from his business -- due to one co-conspirator's unplanned killing of victim); United States v. Choe, 203 F.3d 833 (9th Cir. 1999) (unpublished mem. disposition) (conspiracy to purchase 6,000 stolen computer chips was complete or about to be complete where defendant had taken steps in furtherance of the conspiracy, including making purchase contract and arranging for financing, yet was unable to complete purchase due to insufficient funds); United States v. Dosen, 738 F.3d 874, 877-78 (7th Cir. 2013) (defendant not entitled to reduction under § 2X1.1 where conspirators were in pursuit of vehicle they conspired to rob, but were unable to complete the conspiracy because they lost sight of vehicle in traffic); United States v. Martinez, 342 F.3d 1203, 1208 (10th Cir. 2003) (defendant not entitled to reduction under § 2X1.1 where robbery conspirators kidnapped bank president and held his wife hostage, but conspiracy was unsuccessful because bank president and co-conspirator were unable to open bank safe).

Because defendant is not entitled to the three-level reduction under § 2X1.1, the court OVERRULES Objection 1.

Objections 2 and 3

Defendant's second objection is that the PSR mistakenly states that Hoang Ai Le helped plan the DFI robbery.  (Docket No. 2005 at 18-21.)  Similarly, defendant's third objection is that the PSR inaccurately states that he was a "high ranking" member of the DFI conspiracy #2 and that he was "in charge of the crew that would gain entry in to DFI and steal the computer chips." (Docket No. 2005 at 21-22.)

Defendant raised similar objections at the time of resentencing in 2020, which the court overruled.  (See Docket No. 1893 at 4-8; Docket No. 1912 at 10-11.)  The court found that, among other things, "there was evidence at trial that put into perspective Mr. Le's role in the offense," "[i]t was one plan, and the evidence of Mr. Le's role in the John That Luong group was pretty clear that he was a leader," and "there's a clear inference that Mr. Le . . . met with other defendants and helped to plan the DFI robbery, and further, he played a leadership role in that robbery."  (Docket No. 1912 at 10-11.)  The court also explained that Luong was "a higher-ranking member of the DFI#2 conspiracy"; "if anyone was said to be in charge of that group that would gain entry to DFI after they had the alarm codes and keys, that would be Mr. Le"; and "it is most probable that Mr. Le was the one in charge of that crew."  (Docket No. 1912 at 11, 13.)

These objections essentially ask the court to reconsider its prior interpretation of the evidence regarding his participation in the conspiracy.  The court has no reason to change its prior findings with regard to defendant's role in the offense.  Indeed, the Ninth Circuit previously affirmed the application of a 3-level leadership role under U.S.S.G. § 3B1.1(b) on appeal of the 2020 resentencing, finding:

> The record supports that Le was a high-ranking member of the conspiracy, he was present at a planning meeting for the robbery, he was introduced and singled out by another member of the conspiracy for his role in one of the crews, and one of the teams was referred to as Le "as his crew."

Le, 2021 WL 4892166, at *2.  Based on the court's own assessment

6

of the evidence and the Ninth Circuit's ruling on appeal, which implicitly, if not explicitly, accepts the court's interpretation of the evidence as to defendant's participation and role, the court OVERRULES Objections 2 and 3.[2]

Objection 4

Defendant's fourth objection is that the correct base offense level is 18 based on U.S.S.G. § 2B3.2, the guideline for extortion by force.  (Docket No. 2005 at 22-23.)  Once again, defendant raised a similar objection at resentencing in 2020.  (Docket No. 1893 at 9-12; Docket No. 1912 at 13-15.)  The court overruled the objection, holding, among other things, that (1) because the crime "was charged as a robbery, and that's the crime of conviction," the court should apply the base offense for robbery; (2) "the evidence at trial was more in keeping with a finding of robbery than it was with extortion,"; and (3) "without the robbery, the whole thing wouldn't have worked."  (Docket No. 1912 at 15-16.)

Defendant was charged with and convicted of conspiracy to commit a robbery affecting interstate commerce, not conspiracy to commit extortion affecting interstate commerce.  (Docket No. 1; Docket No. 1067-1.)  Moreover, the Ninth Circuit has already stated that the applicable Guidelines for defendant's crime of conspiracy to commit robbery under the Hobbes Act is § 2X1.1.  2021 WL 4892166, at *1.  In fact, that appears to be the very reason for this remand.  Section 2X1.1, which covers attempt,

---

[2] The court expresses no opinion as to the government's argument that the law of the case doctrine precludes the court from reconsidering its prior determination that a leadership role enhancement should apply.

7

solicitation, or conspiracy, states that the base offense level shall be the base offense level from the guideline for the substantive offense.  U.S.S.G § 2X1.1(a); see also U.S.S.G. § 2X.1.1 Application Note 2 ("'Substantive offense,' as used in this guideline, means the offense that the defendant was convicted of soliciting, attempting, or conspiring to commit."). In this case, the substantive offense is robbery under the Hobbes Act.  The most analogous Guideline for Hobbes Act robbery is U.S.S.G. § 2B3.1, the Guideline for robbery, which provides for a base offense level of 20.  Accordingly, the court OVERRULES Objection 4.

Objection 5

Defendant's fifth objection is that his offense level should not be increased six levels under § 2B3.1(b)(2) for use of a firearm.  He argues (1) the government did not prove that he personally used or possessed a firearm because his conviction under 18 U.S.C. § 924(c)(1) was vacated, (2) the court cannot consider use or possession by his co-conspirators, and (3) the court cannot apply this enhancement absent clear and convincing evidence and cannot find such evidence here.  (Docket No. 2005 at 23-26.)

Once more, defendant raised similar arguments at resentencing in 2020.  (Docket No. 1893 at 9-12; Docket No. 1912 at 16-18.)  The court overruled the objection, finding that (1) under Pinkerton v. United States, 328 U.S. 640 (1946), defendant was responsible for the use of a firearm by one of the co-conspirators; (2) the jury did find that a firearm was used during and in relation to the conspiracy, and (3) clear and

8

1  convincing evidence showed that a firearm was used during the
2  conspiracy, even if the jury had not made such a finding.
3  (Docket No. 1912 at 20-21.)  The court once again rejects these
4  arguments.  Here, even assuming the government has not proven
5  that defendant personally used a firearm, there is clear and
6  convincing evidence that "[t]wo handguns were used by
7  codefendants to guard the victims, and one victim was hit with a
8  gun when he explained he was not the owner."  (See PSR § 37.)

9            The Ninth Circuit has explained that a defendant may be
10 liable under 18 U.S.C. § 924(c) based on the actions of a co-
11 conspirator where "(1) the substantive offense was committed in
12 furtherance of the conspiracy; (2) the offense fell within the
13 scope of the unlawful project; and (3) the offense could
14 reasonably have been foreseen as a necessary or natural
15 consequence of the unlawful agreement."  United States v.
16 Fonseca, 114 F.3d 906, 908 (9th Cir. 1997) (quoting United States
17 v. Douglass, 780 F.2d 1472, 1475-76 (9th Cir. 1986)).  See also
18 Pinkerton, 328 U.S. at 647-48.  Thus, in Fonseca, the Ninth
19 Circuit affirmed a defendant's conviction under § 924(c) where
20 his conviction was based solely on the use and carrying of a gun
21 by a co-conspirator, because his co-conspirator used the firearm
22 in furtherance and in the scope of their drug trafficking
23 conspiracy and because the defendant could reasonably have
24 foreseen that it was a necessary or natural consequence of the
25 conspiracy that one of the participants would carry a firearm.
26 114 F.3d at 908.  See also U.S.S.G. § 1B1.3(a)(1)(B) (defining
27 "relevant conduct" as including "in the case of a jointly
28 undertaken criminal activity . . . all acts and omissions of

9

others that were -- (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction . . . .).

Similarly, here, the court finds that defendant's co-conspirators used guns in furtherance of the Hobbes Act conspiracy, that such use was within the scope of the conspiracy, and that the use of guns was foreseeable as a necessary or natural consequence of the unlawful agreement in this case. (See PSR § 37 (Docket No. 2002).) Accordingly, a six-level enhancement under § 2B3.1(b)(2)(B) is appropriate, and the court OVERRULES Objection 5.

Objections 6 and 7:

Defendant's sixth objection is that he should not receive a two-level enhancement being added for bodily injury under 2B3.1(b)(3)(A) because he did not personally injure anyone, was not present at the U Street house, and was not present at planning for the second DFI robbery. Similarly, defendant's seventh objection is that he should not receive a two-level enhancement under § 2B3.1(b)(4)(B) for a victim being physically restrained because he did not personally participate in that restraint. (Docket No. 2005 at 27-28.)

Again, defendant raised similar objections on resentencing in 2020. (Docket No. 1893 at 13-14; Docket No. 1912 at 21, 23.) The government argued not only that Pinkerton liability was appropriate but also that a direct application of §§ 2B3.1(b)(3)(A) and 2B3.1(b)(4)(B) warranted a two-level

increase for bodily injury and a two-level increase for physical restraint because they focus on the impact on the victim. (Docket No. 1897 at 12; Docket No. 1912 at 21-22.)  The court adopted the government's direct application of the Guidelines and overruled defendant's objections, based upon the pistol whipping, beating, and restraint of the victim "even though the defendant may not have personally performed those acts" and did not opine whether defendant was also subject to these enhancements under a Pinkerton theory.  (Docket No. 1912 at 25.)

These objections fail again for reasons similar to those discussed above with respect to the firearm enhancement. While defendant may not have personally participated in the bodily injury or restraint of a victim, the restraint and injury discussed in the PSR were in furtherance of the conspiracy, were within the scope of the conspiracy, and were foreseeable as necessary or natural consequences of the conspiracy.  Accord Fonseca, 114 F.3d at 908; see also U.S.S.G. § 1B1.3(a)(1)(B). Accordingly, the PSR appropriately added two levels for bodily injury and two levels for a victim being physically restrained, and defendant's Objections 6 and 7 are OVERRULED.

Objection 8

Defendant's eighth objection is that he should not receive a three-level enhancement for leadership pursuant to § 3B1.1(b), because he was not a manager or supervisor.  (Docket No. 2005 at 28-32.)  Defendant raised a similar argument at sentencing in 2020.  (Docket No. 1893 at 14-18; Docket No. 1912 at 25-26.)  The court overruled the objection, explaining that on sentencing, the court was not limited to the evidence at trial,

11

"[t]here is substantial evidence in the presentence report, and the Court is familiar with that evidence that Mr. Le was a leader in the Luong organization, and the Court takes that into account." (Docket No. 1912 at 25-28.)

This court previously found that this enhancement applied and, as discussed above, the Ninth Circuit affirmed this application. See 2021 WL 4892166, at *2. The court sees no reason to depart from its prior finding that a 3-level leadership enhancement should apply. Accordingly, defendant's Objection 8 is OVERRULED.

Objection 9:

Defendant's ninth objection is to the PSR's discussion of the Phnom Pich robbery in Stockton, California in January 1996, because defendant was acquitted of Counts One, Two, and Three of the Indictment, which relate to this robbery.[3] (See Docket No. 2005 at 33; PSR ¶¶ 49-66; Docket No. 1; Docket No. 1067-1.) The court agrees with the government that as a general proposition the court may consider acquitted conduct at sentencing so long as the conduct has been proven by the preponderance of the evidence. See, e.g., United States v. Mercado, 474 F.3d 654 (9th Cir. 2007). Nevertheless, the court does not find consideration of such conduct to be relevant to the

---

[3] Defendant raised a similar objection at resentencing in 2020. (Docket No. 1893 at 18; Docket No. 1912 at 28, 31-32.) After a lengthy discussion with counsel and the probation officer, the court explained that the Supreme Court has said the PSR can "even include acquitted conduct that took place at some totally different time and place" but the court renamed the section titled "Offense behavior not part of relevant conduct" as "Counts 1 through 3, acquitted conduct." (Docket No. 1912 at 28-32.)

calculation of the applicable guidelines here, and accordingly will disregard paragraphs 49-66 in determining the sentence.

Objection 10:

Defendant's tenth objection is that he should not receive three criminal history points based on his convictions in the Northern District of California for conspiracy to bring aliens into this country on the same day. (Docket No. 2005 at 33-35.) Defendant contends that the court is collaterally estopped from applying these points given that court previously found that he should only receive one criminal history point for the 1996 convictions. Defendant further contends that it is unfair for him to receive three criminal history points in this case simply because prosecutors in the Northern District elected to bring the Northern District case to trial before this case.

Defendant raised similar arguments at resentencing in 2020. (Docket No. 1893 at 19-20; Docket No. 1912 at 32-39.) After a lengthy discussion about how the discrepancy may have occurred, the court explained that "the only explanation is that the Court made a mistake in determining the criminal history, because it didn't order another presentence report" after defendant was convicted in the Northern District, and on resentencing, "neither side should get a windfall" from a mistake the court may have made previously. The court ultimately concluded that on resentencing, it "should be free to consider the criminal history, the defendant's background, circumstances of the offense, and every other relevant factor fresh, and to make its sentencing determination now based upon its present evaluation" and therefore overruled the objection. (Docket No.

13

1912 at 39.)

Although it is not quite clear why the court originally found that only one criminal history point should apply for the Northern District convictions, defendant does not appear to dispute that if he was sentenced today for the first time, he would receive three criminal history points for these convictions.  Moreover, defendant does not cite, and the court is unaware of, any authority requiring the court to adopt a prior erroneous calculation of the Guidelines or underlying erroneous determinations regarding criminal history points or offense level.[4]  Indeed, where a court of appeals vacates a sentence and remands for resentencing without any limitation on the remand, "the district court may consider any matter relevant to the sentencing."  United States v. Ponce, 51 F.3d 820, 826 (9th Cir. 1995).  Here, the court adopts the Presentence Report's determination that defendant should receive three criminal history points for the convictions in the Northern District under § 4A1.1(a) (PSR ¶ 73), notwithstanding the court's prior determination in 2020.[5]  Accordingly, defendant's Objection 10 is

---

[4] Defendant's cited authority is inapposite, as the court found in 2020.  (See Docket No. 1912 at 45-46.)  In Ashe v. Swenson, 397 U.S. 436 (1970), the Supreme Court explained that a state could not try a defendant a second time for robbery of the same victim where the defendant had been acquitted in the first trial.  This issue of double jeopardy is not present here, where the Ninth Circuit has vacated defendant's 2020 sentence and the case has been remanded for resentencing.

[5] The court also overrules the objection to the extent it argues that it is unfair for defendant to receive three additional criminal history points in this case because the Northern District cases were brought to trial before trial in this case.  There is nothing unfair about a defendant receiving additional criminal history points when he is convicted and

14

1  OVERRULED.

2     Objection 11:

3         Defendant's eleventh objection is that he should not
4  receive two additional criminal history points for committing the
5  instant offense while under a criminal justice sentence, because
6  the 2009 Presentence Report did not recommend such additional
7  points.  (Docket No. 2005 at 11; see also PSR § 76.)

8         Once again, defendant raised a similar argument in
9  2020.  (Docket No. 1893 at 20; Docket No. 1912 at 40-41, 44-45.)
10 The court explained that on resentencing, "[i]t's not a one-way
11 street where you start with whatever the defendant got the first
12 time around, and you try to see if there's something more
13 favorable to him, but you can't consider anything less favorable
14 to him."  The court also determined that collateral estoppel did
15 not apply in this case.  (Docket No. 1912 at 44-46.)

16        The court overrules this objection for reasons similar
17 to its overruling of Objection 10.  While it is not clear why the
18 original Presentence Report did not state that defendant was on
19 probation for a state offense when he committed the instant
20 offense, defendant does not dispute that (1) he was in fact on
21 probation, (2) probation qualifies as a criminal justice
22 sentence, and (3) the Guidelines call for the addition of two
23 criminal history points where a defendant commits an offense
24 while under a criminal justice sentence.  Moreover, given the
25 Ninth Circuit's vacating of the 2020 sentence and remand for
26 resentencing, the court is free to consider any and all factors

27

28 sentenced for additional crimes in another case.

15

on resentencing, including whether defendant was under a criminal justice sentence at the time of the instant offense.  Here, the court determines that defendant was in fact under a criminal justice sentence at the time of the instant offense and thus OVERRULES defendant's Objection 11.

Objection 12:

Defendant next objects to "all unadjudicated criminal conduct" being included by his PSR because the government has not supported these allegations by any credible evidence.  (Docket No. 2005 at 35.)  Defendant raised a similar argument at the 2020 resentencing.  (Docket No. 1893 at 20-21; Docket No. 1912 at 46-47.)  The court at that time overruled the objection, stating that while it "couldn't think of any case where [it had] given any weight to unadjudicated criminal conduct," Federal Rule of Criminal Procedure 32 required the court to "consider everything about the defendant" and required inclusion of unadjudicated criminal conduct in the PSR.  (Docket No. 1912 at 47-48.)

The court notes that the criminal conduct listed in the PSR at paragraphs 79-84 all involved instances where defendant was charged with crimes but the charges were eventually dismissed, or prosecution was "released," "discharged," or "rejected," including some counts on the basis of insufficient evidence.  The court finds that the government has not proven this uncharged conduct by a preponderance of the evidence, see United States v. Russell, 905 F.2d 1439, 1441 (10th Cir. 1990), and the court gives it no weight.  Accordingly, the court ORDERS that paragraphs 79 through 84 regarding "Other Criminal Conduct"

1   be STRICKEN from the Presentence Report.[6]

2      <u>Objection 13</u>:

3      Defendant finally objects to the PSR making no recommendation as to whether the sentence in this case should run concurrently to his sentence for his conviction in the Northern District of California. (Docket No. 2005 at 36-38.) Defendant made a similar argument at resentencing in 2020. (Docket No. 1893 at 22-24; Docket No. 1912 at 55-57, 61-62.) The court overruled the objection stating, among other things, that it would simply "look to the facts and circumstances of this case, and impose the appropriate sentence for this case" and did not express any opinion as to whether the sentence in this case should run consecutively or concurrently with some other case. (Docket No. 1912 at 56-61.)

     The court recognizes its discretion to order that sentences run concurrently. <u>See, e.g.</u>, <u>Setser v. United States</u>, 566 U.S. 231, 236 (2012). However, for reasons which will be discussed more fully at sentencing hearing, the court is not inclined to do so here. Accordingly, the court will OVERRULE Objection 13.

     IT IS SO ORDERED.

Dated: June 20, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[6] Defendant does not object to the inclusion of four other arrests listed at ¶¶ 86-89, perhaps because they only list arrests, not cases where he was actually charged. Accordingly, the court does not address them.